Filed 3/15/22  P. v. Daley CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>    v.<br><br>EVA DALEY,<br><br>      Defendant and Appellant. | B307943<br><br>(Los Angeles County Super. Ct. No. NA074833-01) |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, James Otto, Judge.  Reversed and remanded with directions.

Susan K. Shaler, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior

Assistant Attorney General, Amanda V. Lopez and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Eva Daley was convicted in 2013 of the second degree murder of 13-year-old Jose Cano following a jury trial at which the prosecutor argued Cano's murder was the natural and probable consequence of a gang-related assault enabled by Daley. In January 2019 Daley petitioned for resentencing pursuant to Penal Code section 1170.95.[1]  After appointing counsel for Daley and receiving briefs from the People and Daley's attorney, the superior court denied the petition, finding "a reasonable jury could find beyond a reasonable doubt that [Daley] acted with implied malice and/or a reckless disregard for human life and would be guilty of second degree murder."  As Daley and the Attorney General agree, the superior court erred, and the matter is properly remanded for the court to issue an order to show cause and hold an evidentiary hearing at which the prosecution is required to prove beyond a reasonable doubt that Daley is guilty of murder under current law.

**FACTUAL AND PROCEDURAL BACKGROUND**

1.  *Daley's Conviction for Second Degree Murder*

The evidence at Daley's third trial[2] established that Cano, a member of the Latin Thugs, a Long Beach area criminal street

---

[1]  Statutory references are to this code.

[2]  At her initial trial Daley and Heriberto Garcia, Cano's actual killer, were both found guilty of second degree murder. We affirmed Garcia's conviction but reversed as to Daley based on an erroneous instruction on the natural and probable consequences doctrine.  (*People v. Garcia* (Aug. 2, 2010, B211909)

gang, was stabbed to death during an attack by Heriberto Garcia and other teenage members of the Loco Marijuana Smokers (or LMS) gang or tagging crew, a rival of the Latin Thugs. Daley, whose son, Mauricio Rivera, was a member of LMS, drove Garcia, Rivera and several other LMS members to and from the area where the murder occurred.

On the day of the attack Rivera and Carlos Jimenez, another LMS member who lived in the same apartment complex as Daley and Rivera, were involved in a confrontation with Latin Thugs gang members in an alley behind the complex. During the altercation Daley and Jimenez's mother joined their sons in the alley and remained there, talking to Rivera and Jimenez, after the Latin Thugs left. According to Jimenez, the Latin Thugs had threatened his mother.

Following the incident a group of Latin Thugs members drove by the apartment complex and displayed gang signs from their vehicle. Later that evening, as Daley drove her SUV with a group of at least seven LMS members, including Garcia, Rivera and Jimenez, they saw Cano and other Latin Thugs gang members standing together in Latin Thugs territory. Daley stopped the SUV, and the youths jumped out and ran toward their rivals. Cano was chased to a nearby park, where he was surrounded and beaten. Garcia stabbed Cano with a knife, which was never recovered. Some of the LMS members then returned to Daley's SUV, where she had been heard by a witness shouting, "Come on, come on, let's go, let's go." Daley drove quickly away from the scene.

---

[nonpub. opn.].) Daley's second trial ended in a mistrial when the jury was unable to reach a verdict.

3

There was testimony at trial that several of the young men were carrying sticks or small bats when they got into Daley's SUV and that they discussed their plan to "rumble" with the Latin Thugs because they had been disrespected at Rivera's home. However, there was no evidence Daley knew Garcia was armed with a knife.

Testifying in her defense, Daley insisted she was simply taking her son's friends home when someone in the back of the vehicle told her to stop. She slowed the SUV, and the young men jumped out. She then stopped, not knowing what was happening. Daley remained in the car until the youths returned. She did not learn that someone had been seriously injured until the following day.

The jury found Daley guilty of second degree murder and found not true a criminal street gang enhancement. She was sentenced to an indeterminate state prison sentence of 15 years to life.

Daley's appeal of her conviction focused on the prosecution's theory she was liable for Cano's murder under the natural and probable consequences doctrine. We affirmed the conviction (*People v. Daley* (Aug. 20, 2014, B248219) [nonpub. opn.]), rejecting Daley's arguments the People had failed to carry their burden of proving Daley had the requisite knowledge of Garcia's criminal purpose (the intended assault of rival gang members) and that murder was a natural and probable consequence of the assault that occurred. We also rejected her claim the instruction on the natural and probable consequences doctrine erroneously omitted the requirement of a nexus between the target offense that she had allegedly aided (assault) and the nontarget offense (murder) committed by Garcia.

2. *Daley's Petition for Resentencing*

On January 17, 2019 Daley, representing herself, filed a petition for resentencing under section 1170.95 and checked boxes on the printed form petition to establish her eligibility for relief, including the boxes stating she had been charged and convicted of murder under the natural and probable consequences doctrine and could not now be convicted of first or second degree murder because of changes made to sections 188 and 189 by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437). The superior court appointed counsel to represent Daley.

In an opposition memorandum the prosecutor asserted Daley had been tried under the theory she had directly aided and abetted Cano's murder, as well as the theory the murder was a natural and probable consequence of the assault on Cano, and argued the facts as described in our opinion affirming Daley's conviction established Daley had acted with implied malice and was "factually ineligible for relief." Daley's counsel filed a reply memorandum and argued at a hearing before the court on September 21, 2020 that Daley had been tried under the natural and probable consequences doctrine; it was improper to introduce a new theory of liability (implied malice) at this point in the proceedings; and, in any event, the evidence was insufficient to support a conviction under an implied malice theory. The prosecutor responded at the hearing that, although the main theory at trial had been that Daley was liable for murder under the natural and probable consequences doctrine, there was sufficient evidence to support a conclusion she had acted with implied malice.

5

The court suggested the question before it was whether "a reasonable jury, based on the evidence presented, [would] have found beyond a reasonable doubt defendant acted with implied malice and/or reckless disregard for human life and was a major participant." The prosecutor gently corrected the court, explaining the major participant aspect of Senate Bill 1437's reform of accomplice liability for murder applied only to the felony-murder rule, which was not at issue in this case, and confirmed he was arguing Daley was ineligible for relief based on evidence that she had acted with implied malice (a reckless disregard for human life) while aiding and abetting the murder. The court then observed that circumstantial evidence could support a finding of implied malice and denied the petition, finding a "reasonable jury could find beyond a reasonable doubt that [Daley] acted with implied malice and/or a reckless disregard for human life and would be guilty of second degree murder."

Daley filed a timely notice of appeal.

## DISCUSSION

1. *Senate Bill 1437 and the Section 1170.95 Petition Procedure*

Senate Bill 1437 substantially modified the law relating to accomplice liability for murder, eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*)) and significantly narrowing the felony-murder exception to the malice requirement for murder. (§§ 188, subd. (a)(3), 189, subd. (e); see *People v. Lewis* (2021) 11 Cal.5th

6

952, 957 (*Lewis*).)[3]  It also authorized, through new section 1170.95, an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder because of Senate Bill 1437's changes to the definition of the crime.  (See *Lewis*, at p. 957; *Gentile*, at p. 843.)

If the section 1170.95 petition contains all the required information, including a declaration by the petitioner that he or she is eligible for relief (§ 1170.95, subd. (b)(1)(A)), the court must appoint counsel to represent the petitioner, if requested (§ 1170.95, subd. (b)(3)),[4] and direct the prosecutor to file a response to the petition, permit the petitioner to file a reply and determine if the petitioner has made a prima facie showing that he or she is entitled to relief.  (§ 1170.95, subd. (c); see *Lewis*, *supra*, 11 Cal.5th at pp. 962-963.)

In determining whether the petitioner has carried the burden of making the requisite prima facie showing he or she falls within the provisions of section 1170.95 and is entitled to relief, the superior court properly examines the record of conviction, "allowing the court to distinguish petitions with potential merit from those that are clearly meritless."  (*Lewis*,

---

[3]     As amended by Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551, § 2), effective January 1, 2022, the ameliorative provisions of Senate Bill 1437 now also apply to attempted murder and voluntary manslaughter.

[4]     Prior to enactment of Senate Bill No. 775 the requirement to appoint counsel was set forth in subdivision (c) of section 1170.95.

*supra*, 11 Cal.5th at p. 971.)  However, "the prima facie inquiry under subdivision (c) is limited.  Like the analogous prima facie inquiry in habeas corpus proceedings, the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause. . . .  However, if the record, including the court's own documents, contain[s] facts refuting the allegations made in the petition, then the court is justified in making a credibility determination adverse to the petitioner." (*Id.* at pp. 970-971, internal quotation marks omitted.)

If the section 1170.95, subdivision (c), prima facie showing has been made, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts.  (§ 1170.95, subd. (d)(1).)  At the hearing the prosecution has the burden of proving, "beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019."  (§ 1170.95, subd. (d)(3), as amended by Senate Bill No. 775, effective January 1, 2022.)[5]  The prosecutor and petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens. (See *Gentile*, *supra*, 10 Cal.5th at pp. 853-854.)

---

[5]     Senate Bill No. 775 also amended section 1170.95, subdivision (d)(3), to clarify that "[a] finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing."

2. *Remand Is Necessary for the Superior Court To Issue an Order To Show Cause and Conduct an Evidentiary Hearing at Which the Court Applies the Correct Standard of Proof*

The superior court did not issue an order to show cause prior to the hearing on September 21, 2020 at which the parties discussed the evidence presented at Daley's third trial, and the court responded based on its understanding of the facts. (As Daley explains in her opening brief, the superior court did not review the trial record, relying on the factual summary in our opinion affirming Daley's conviction and counsel's discussion of what the trial evidence showed.) It is not entirely clear, therefore, whether the superior court intended to deny the petition because Daley had failed to make the prima facie showing required by section 1170.95, subdivision (c), before the court must issue an order to show cause and hold an evidentiary hearing (as the Attorney General contends) or because, following an evidentiary presentation, the prosecution had proved Daley was ineligible for resentencing within the meaning of section 1170.95, subdivision (d)(3) (as Daley argues).

We need not attempt to resolve that uncertainty: Under either scenario, reversal and remand for an evidentiary hearing applying the proper standard of proof is required. To the extent the superior court found that Daley had failed to make the required prima facie showing, it did so by engaging in impermissible factfinding. Daley's section 1170.95 petition alleged she had been prosecuted and convicted of murder under the natural and probable consequences doctrine, allegations that are amply supported by our opinion affirming her appeal, which confirmed the jury had been instructed on the natural and probable consequences doctrine and the prosecutor had argued

9

that theory to the jury.  Whether Daley could now be convicted of murder on a theory of implied malice cannot be determined as a matter of law from the record of conviction; the answer to that question necessarily requires a weighing of the evidence that will be presented at a subdivision (d)(3) hearing following issuance of an order to show cause.

If the superior court actually intended its ruling to constitute a finding after an evidentiary hearing that Daley was ineligible for resentencing relief, remand is also necessary; because the court used an incorrect standard of proof:  It determined only that a reasonable jury could find her guilty on a still-valid theory of murder, not that the prosecution had proved (to the court acting as independent fact finder), beyond a reasonable doubt, that Daley was guilty of murder under current law, as now expressly required by section 1170.95, subdivision (d)(3), as amended by Senate Bill No. 775.  And as the Attorney General acknowledges, even were we to evaluate whether the superior court's use of an improper standard of proof constituted harmless error, because the court's findings referred not only to implied malice but also to "a reckless disregard for human life"— a standard that is entirely irrelevant to the facts of Daley's case— it is not possible on this record to determine what the outcome of a properly conducted evidentiary hearing would be.

## DISPOSITION

The postjudgment order denying Daley's petition for resentencing is reversed, and the matter remanded for the superior court to issue an order to show cause and to hold an evidentiary hearing applying the correct standard of proof and evidentiary rules as set forth in section 1170.95, subdivision (d)(3).

PERLUSS, P. J.

We concur:

SEGAL, J.

FEUER, J.

11